IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHAREZZ JONES, | ) |
| *Plaintiff*, | ) |
| v. | ) No. 23 C 4513 |
| VILLAGE OF LYNWOOD, et al., | ) Judge Virginia M. Kendall |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charezz Jones brought an action under 42 U.S.C. § 1983, along with state-law claims, against Defendants Village of Lynwood and Officer Anthony Sinnott after an officer used a taser gun repeatedly against him. (Dkt. 1). On September 15, 2023, Defendants moved to dismiss several counts of Jones's complaint. (Dkt. 15). In response, Jones conceded dismissal of the following claims: excessive force against the Village (Count I); state-law assault against the Village and Officer Sinnott (Counts III, IV); and state-law intentional infliction of emotion distress against the Village and Officer Sinnott (Counts VII, VIII). (Dkt. 19 at 2).[1] The only remaining count in Defendants' Motion to Dismiss is the *Monell* claim against the Village (Count IX). For the following reasons, Defendants' Motion to Dismiss [15] is granted.

## BACKGROUND

In the early morning of July 19, 2021, Officer Sinnott, along with other officers from the Lynwood Police Department, responded to a call reporting a disturbance. (Dkt. 1 ¶ 14). When they arrived, Jones was at the scene; shortly thereafter he walked away to grab a set of keys from his

---

[1] While Plaintiff conceded Count V in passing, (Dkt. 19 at 2), the Court reads this as a clerical error. Defendants did not seek dismissal of Count V—state-law malicious prosecution against the Village—and neither party substantively briefed Count V in response nor reply.

1

car. (*Id.* at ¶¶ 20, 26). As Jones was walking away from his car, a woman approached him in an aggressive manner and began yelling. (*Id.* at ¶ 27). Officer Sinnott and another officer placed themselves between Jones and the woman. (*Id.* at ¶¶ 28–29). According to body worn camera footage, Jones did not "make any motion to strike or make contact" with the woman or with Officer Sinnott. (*Id.* at ¶¶ 30, 310). Nevertheless, Officer Sinnott pointed his taser at Jones—who was unarmed—causing Jones to turn his back to Officer Sinnott. (*Id.* at ¶¶ 33–35). Without warning, Officer Sinnott proceeded to tase Jones twice—in the chest and then again against his neck—at which point Jones fell to the ground. (*Id.* at ¶¶ 37–40). After these initial tases, Jones "remained still and did not present a threat." (*Id.* at ¶ 38). While Jones was lying face-down on the ground, Officer Sinnott tased him a third time, this time in his back, before placing him under arrest. (*Id.* at ¶¶ 43–45). Several officers took Jones back to the Lynwood Police Department where he was charged with misdemeanor complaints for resisting and or obstructing a peace officer (720 ILCS 5/31-1) and battery (720 ILCS 5/12-3(a)(2)). (*Id.* at ¶ 49). Ultimately, both criminal charges were dismissed by the Cook County State's Attorney's Office on May 10, 2023. (*Id.* at ¶ 50).

As a result of the above incident, on July 12, 2023, Jones sued the Village of Lynwood and Officer Anthony Sinnott for excessive force, assault, malicious prosecution, intentional infliction of emotion distress, and for indemnification from the Village. (*Id.* ¶¶ 53–104, 118–120). Jones also seeks municipal liability for "implicit or actual policies and customs" of the Village, the Village's police department, and its police officers, that caused the violation of his Fourth Amendment constitutional rights. (*Id.* at ¶¶ 105–17); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Based on concessions by Jones, (Dkt. 19 at 2), the *Monell* claim is the only remaining contested claim from the Defendants' partial motion to dismiss, (Dkt. 15).

2

**LEGAL STANDARD**

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Nonetheless, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

A municipality is a suable "person" within the meaning of the 42 U.S.C. § 1983, but only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible" for inflicting. *Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023) (quoting *Monell*, 436 U.S. at 694). Accordingly, the law takes care that municipalities are not vicariously liable under § 1983 for the constitutional torts of their employees. *Monell*, 436 U.S. at 694; *Glion v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) ("The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?"). Instead, a plaintiff must show that a

municipal policy or custom *caused* the constitutional injury. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022). To establish liability under *Monell*, a plaintiff must plead: "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019); *see also*, *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404–07 (1997). These three requirements must be "scrupulously applied to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Bohanon*, 46 F.4th at 676.

Jones attempts to establish municipal action through pleading the following theories that the Village of Lynwood (a) ignores allegations of excessive force; (b) systematically hires and retains police officers with inadequate training; (c) allows police officers to intentionally falsify police reports; (d) fails to monitor and review the filing of criminal charges; and (e) allows officers to tase unarmed, nonviolent individuals. (Dkt. 1 ¶¶ 105–17). In other words, that the Village has a widespread practice of allowing its police department to "unconstitutionally use excessive force against its citizens without repercussions." (Dkt. 19 at 4). To determine whether a *Monell* plaintiff sufficiently pled a widespread custom or practice, the Court considers the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts supporting a finding of the widespread practice. *See, e.g.*, *Carmona v. City of Chicago*, No. 15 CV 462, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018).

As an overarching matter, Jones generally fails to plead facts so that a widespread practice or custom can be inferred. First, Jones's theories essentially allege the Village has "polic[ies] of inaction." *J.K.J. v. Polk County*, 960 F.3d 367, 378 (7th Cir. 2020). Though *Monell* liability can

4

arise from such decisions of inaction, this path is "steeper because . . . failure to do something could be inadvertent and the connection between inactions and a resulting injury is more tenuous," so "rigorous standards of culpability and causation must be applied." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 405). Moreover, a theory of "inaction" only amounts to municipal action if the Village "has notice that its program will cause constitutional violations" through "proof of a prior pattern of similar constitutional violations" or a showing of a rare circumstance where a failure to act "could be so patently obvious" that one instance displays "deliberate indifference." *Polk County*, 960 F.3d at 379–80; *see also Connick v. Thompson*, 563 U.S. 51, 63, 70 (2011).

For four of his theories, Jones employs boilerplate language. He states that the Village "allows members . . . to intentionally falsify police reports," "had failed to monitor . . . the filing of criminal charges against its citizens," and ignores allegations of excessive force. (Dkt. 1 at ¶¶ 111, 114–15). For failure to train, Jones simply alleges the Village, "systematically hires and maintains members of the Lynwood Police Department who are inadequately trained and unqualified." (*Id.* at ¶ 112). Formulaic recitations and "broad accusations of misconduct" not "tailored to identify particular police training or procedures" do not withstand a motion to dismiss. *Milan v. Schulz*, No. 21 CV 765, 2022 WL 1804157, at *4 (N.D. Ill. June 2, 2022); *see Iqbal*, 556 U.S. 662 at 678. Rather than painting a picture of how the Village had a widespread practice of allowing their employees to engage in these transgressions, Jones only points to his own case. Jones's conclusory statements and sole example do not come close to meeting the rigorous standard needed to allege policies of inaction. *See Taylor v. Hughes*, 26 F.4th 419, 437 (7th Cir. 2022) ("[A]n implied policy is typically actionable only with considerably more proof than a single incident.") (internal quotations omitted).

5

For his final theory, Jones provides three instances to support the existence of the Village's widespread custom or practice of allowing excessive force. First, in July 19, 2021, that Jones was tased three times by Officer Sinnott, despite being unarmed and non-threatening. (Dkt. 1 ¶ 32). Second, in July 2014 a Lynwood Police Officer allegedly punched a man being held in custody in handcuffs without provocation. (*Id.* at ¶ 107). Finally, nearly five years later in 2019 a Lynwood Police Officer allegedly had his police dog attack a man and then tased him. (*Id.* at ¶¶ 109–10). Jones alleges these actions were taken due to "implicit or actual policies and customs" of the Village. (*Id.* at ¶ 117). In addition, Jones states there have been "numerous lawsuits" against the Lynwood Police Department for excessive use of force. (*Id.* at ¶ 106).

There is no bright line rule for the number of instances necessary to impose *Monell* liability. But a plaintiff "must ultimately show 'there is a policy at issue *rather than a random event*.'" *Thomas Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (emphasis in original). This requirement ensures that a municipality is not held liable for "an isolated incident outside of its control," which would potentially backslide into holding the Village vicariously responsible. *Bohanon*, 46 F.4th at 676; *Taylor v. City of Chicago*, No. 21 CV 2197, 2021 WL 4523203, at *3 (N.D. Ill. Oct. 4, 2021).

Here, Jones provides three instances over the last seven years—two taser incidents, and one where an officer punched an offender—without creating any inference of an overarching theme among them. *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020) (examining how many violations are necessary to establish an unconstitutional municipal custom and holding that three potential violations over nineteen months "do[] not establish a widespread custom or practice"); *see also Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014) ("[I]t is clear that a single incident—or even three incidents—do not suffice.").

6

Thus, regardless of their number, any instances cited by Jones also ought to be "sufficiently similar to the violation giving rise to the plaintiff's claim." *Connick*, 563 U.S. at 62–63. A "few sporadic examples of an improper behavior" do not suggest *Monell* liability. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021). Here, Jones's pled instances appear exactly that: random and sporadic. He requests the Court to infer a pattern where none exists. Even in the light most favorable to Jones, the Court struggles to see how these instances are sufficiently similar in conduct or number to rise to the level of municipal action rather than random, isolated events by individual officers over the course of seven years. While none of these alleged behaviors should be tolerated, their distance in time, distinctiveness in behavior, and infrequency of occurrence render them insufficient to lay the foundation of a widespread custom to render the Village liable. Overall, the conclusory statements that Jones employs in asserting his theories do not create a reasonable inference that the Village maintained a policy, custom, or practice or had notice of a pattern of constitutional violations leading to Jones's injuries. Thus, Count IX should be dismissed without prejudice.

## CONCLUSION

For these reasons, the Defendants' Motion to Dismiss (Counts I, III, IV, VII, VIII, and IX) is granted [15].

_____
Virginia M. Kendall
United States District Judge

Date: December 6, 2023